The last argument on the calendar for today is Case No. 21-1194, Drew v. City of New York Mr. Moss May it please the Court. Raymond Moss of Moorville Law Obramowitz for the appellant, Keith Drew. Your Honors, our position in this appeal is a narrow one. Inmates must be afforded some form of process and an opportunity to object before the City takes their money for purported debts. Under the current policy, the City doesn't provide notice at any point, whether prior to taking the money or after, whether it's a debt that's outstanding or the deduction that's already taken place. And they don't keep track of the date when the supposed debt incurred. That policy cannot withstand scrutiny under Matthews, and every circuit to address this situation where you have an individualized amount taken from an inmate's account has held that some form of process is due before that can happen. Are you arguing for notice, or are you arguing for hearing, or are you saying something should be done? We're arguing that before the money is taken, some form of notice needs to be given. At least notice. At least notice, for sure, but also some opportunity to object. What that looks like, our view is the Commissioner of Correction is best positioned to determine that. But there needs to be an opportunity to object before the money is withdrawn. The City concedes they supplied the District Court with the wrong legal standard, but they don't argue or even suggest on appeal that they can satisfy Matthews. Instead, they're asking this Court to wipe the slate anew and re-litigate this five-year-old case from the beginning. Our view is that is both procedurally inappropriate under the Teamsters case we cite in our papers, but more importantly, it's substantively pointless. The main facts that are relevant for the Matthews inquiry are not in dispute. The City concedes Mr. Drew's private interest in his funds. They don't put forth any interest of their own in the money prior to taking it. Was there discovery into how the systems work and what controls there are and things like that? There, discovery is fully developed as to how the policy operates, as to, you know, what systems. Yeah, as to how they're deducted, whether it's through a computer or otherwise. There's not anything in the record as to that. Wouldn't that be relevant for Matthews' analysis? I don't think so, Your Honor. What's relevant is how the money is taken out by the City, not whether it's by a computer or an individual going in manually, but whether each individual inmate has a unique amount that needs to be deducted each time that deductions are made. In the Montanious case- What is it that you want us to hold? That is, okay, let's say we agree with you that the City had a wrong standard because they had only a post-hearing and not a pre-hearing. What is it that you'd like our decision to say, to say that there was a violation and they have to do something? Or what is it that they should do, or that they should do a Matthew V. Eldridge analysis? You know, I hear what you're saying, that something was done that was wrong, but I'd like to know what it is that you want us to say. Our view is the record is fully developed for this court to hold that some form of notice and an opportunity to object is due. And leave it there. Our view is on remand, that the City can either pursue further as to why- You're saying that we should remand for a discussion before the District Court of what is the appropriate kind of pre-deprivation hearing that would meet the requirements of Matthews V. Eldridge. figure out with the District Court what the right thing is. That's correct, Your Honor, and that's exactly what took place in the Third Circuit's opinion in Mantegna's and the Nines and Chenault. The court ruled very narrowly, and then it was up for the government ultimately to either make these arguments before the District Court, or what I think would be more applicable here for the Commissioner to go back and revise the policy in a way that conforms with the process. That is all what might happen if it went back. But all you're saying to us is to say everybody agrees that there should be some form of pre-deprivation, so send it back. That's correct, Your Honor. Some form of notice and an opportunity to object pre-deprivation. Now, there are only three categories- I'm sorry. Just to clarify, you are not asking us, or are you asking us to essentially do the Matthews analysis and come to a conclusion and send it back as opposed to us sending it back and telling the District Court, now do the Matthews analysis just to- Yeah. Our view is this court should do the work and hold that that process, some form of notice on the front end and process is due. And you think that we have enough information in the record about how this all works to do that analysis? I do. The private interest of Mr. Drew is not in dispute. The government doesn't put forth their own interest. And we know how the policy operates and what these types of deductions look like. It's not just the policy. It's the systems and how they work. I mean, it seems like the city would need to have discovery and you would need to want discovery into how that works. I don't agree, Your Honor. The main inquiry is whether or not the deduction system causes a high risk of error or erroneous deprivation. When you have flat fees like a booking fee when you enter a facility or a daily housing fee that is applied uniformly to every single inmate, automatically there's no exceptions. The courts in the Fourth Circuit, the Sixth Circuit and Eighth have said those scenarios don't present a risk of erroneous deprivation because it's mere accounting. You're deducting the same amount from everybody, no exceptions. That's very different than what we have here. The purchasing decisions of each individual inmate can look very differently. I could, if I sadly end up at Rikers, you know, purchase $30 in an individual month and my friend could purchase $2. That would be different between the two of us and potentially different from the 5,500 other inmates. So you're saying it doesn't matter what the error rate is. You still need a notice and pre-deprivation chance to object. That's correct. The potential – Well, you have evidence of some error of date in this particular case. We do, Your Honor. And the city disputes that. They want to show on remand. They'd like to supplement the record to show that he, in fact, was in jail during these ten deductions. We dispute that. The city could have introduced that below. But even assuming they can prove that, the Matthews factor that looks to the risk of erroneous deprivation doesn't require actual evidence of erroneous deprivation. It's a normative inquiry. Whether the policy as a general matter could have – is simply giving notice is so costless that given likelihood or possibility of error that that much is obviously needed. Whether anything more is needed or warranted is another matter. I think that's correct. And the government's – I see my time is running low here, but I'll briefly wrap up. The government cites to the NIMBY case. I think that's a very good example of how these litigations play out. The city has a policy. Court rules that it's unconstitutional. The city gets a chance to revise the policy. And if further litigation is needed, then it's needed. But if it's not, then that's the end of the matter. Before I sit down, can I ask about the time to amend? It looks like there was about a one-year delay in the time it took. Was there any reason that was given for that? Mr. Drew wasn't given an opportunity to provide a reason. He asked several months after the close of discovery. And rather than be afforded – I mean, when you ask to amend, you give the reason. Typically, Mr. Drew was proceeding pro se and incarcerated at the time. So usually courts will grant some deference and give him an opportunity to provide a good reason. And we submit that if he had an opportunity, he could have said that he only had 30 days to amend even though he was incarcerated. But if a district court was right and the case could be thrown out because there was no need for a pre-deprivation, then the district court's statement, you know, you're late, why should we let you amend under the circumstances, is something one could understand. If we send it back because there is more to be said, then perhaps a district court could reconsider whether under the circumstances a right to amend is justified in these circumstances. If this court were to make a holding as to the procedure to process question and then remand, we certainly would object to the opportunity to ask for it. If a district court would consider. What about the state claims? I mean, our position is that there's no dispute as to those at this point. Mr. Drew was afforded pro se status before the district court. The city on appeal doesn't argue that under the lenient pro se standards, he sufficiently alleged a both convergent and negligence claim. Their position is that the district court should not have afforded him that deference. That's waived in our view. They never raised it below. In fact, they supplied the district court with the pro se standards. But even under the regular pleading standards in the Kenona's case from a couple terms ago, which we think is all. Are both state claims inconsistent with the claim that there was a procedure, a state law and so on? That is, those claims seem to be based on the notion of an aberration by individuals. And that's inconsistent with your claim that there should be a post pre deprivation because this was the rule. Now, that may not be a problem because pleading inconsistently is not any longer the end of the world. But they are inconsistent, aren't they? I don't necessarily agree. I think that although this was pursuant to a policy and we apply Matthews in that analysis, if somebody took money out of his account. For example, Mr. Drew has said that the discharge that's reflected on his transactions list, that money was never actually discharged to him. So you're saying that even though the policy was wrong, it could have been applied incorrectly. And that would give rise to these claims. That's correct. Or somebody taking money outside of the scope of their. And your argument that the district court didn't give deference because he's a frequent filer, which may have affected much of what was in the district court's mind, is incorrect. Because all one needs to do is look at his brief and the brief of the lawyer now to see why he wasn't somebody who could make an argument. I think that's correct. And just to be clear, the city did afford him pro se deference. It just failed to analyze his conversion claim that we submit as apparent from the face of the complaint. Thank you, counsel. Mr. Young. Good morning, your honors. May it please the court. Philip Young here on behalf of the city of New York. The city agrees with Drew here that the district court applied the wrong legal standard to his procedural due process claim. The city just disagrees about what the appropriate remedy is in this case. So what Drew is asking here is for this court to essentially reverse the district court's judgment and hold that he was entitled to pre-deprivation process before the city deducted money from his account. The record just doesn't contain enough information to allow this court to make that determination at this point. It doesn't fully speak to two of the key Matthews factors. First one being the risk of erroneous deprivation. Then the second one being the government's interest here and the burdens associated with providing pre-deprivation process through notice and an opportunity. But what is the cost of the most minimal pre-deprivation process giving notice? No, Matthews v. Eldridge says we look to the harm, to the cost, to the bananas, to this, to any number of things. So they're very difficult things for us to do as an appellate court. On the other hand, isn't it clear that taking a prisoner's very limited amount of money from him or her is a serious thing? I mean that's bound. This is the only money the kid has and that's bound. And that giving notice is almost costless. Now it may be that doing more, like having a hearing or something else, is not required. But that's why I was pressing opposing counsel on what it is you want us to do. To say that something, is that really something that we can't do on this record? So two points in response to that, Your Honor. First, Drew never asks for just notice. What he wants is notice and an opportunity to object. I understand. But counsel, Drew is pro se. He now has counsel. And the counsel makes very different arguments, which is, by the way, telling. And counsel tells us that all we should send it back and say, consider whether notice would be adequate or more. So even if that was the issue here, there isn't discovery and there isn't a record that would allow this court to evaluate whether notice by itself, you know, is required under the Matthews v. Eldridge factors. There is just no discovery about any of that. I've got to say I have a problem with saying that before you take money that is mine and not much, you should give me, you know, send me a word. Tell me so I can tell you. I mean, it's very hard for me to see how that isn't a minimal amount enough. But maybe I'm wrong and, you know, convince me. A number of – this court hasn't directly addressed the issue, but a number of federal circuits have addressed the issue and have concluded that in circumstances very similar to this one, that that type of advance notice isn't necessarily required as long as there is some type of post deprivation process. Those courts have described the prison grievance system as an adequate post deprivation remedy. And then, of course, there's also an Article 78 proceeding that's available as a post deprivation remedy. But again, sort of the bottom line here is that because the city drew and the district court all proceeded on this assumption that the wrong – that a different legal standard applied here, there just wasn't discovery as you're on – Jump in, though. I mean, you describe it as essentially everyone was confused, and that appears to be true. But to the extent that it is the city that was granted summary judgment that was moving for it, the fact that the record is not – was not complete and that the wrong standard was given, it's not sort of, well, everyone just made a mistake. A mistake was made and the city benefited from it. And so what I'm wondering is if we were to send this back, I assume your position is the city should have the opportunity to put in, I guess, new information about the processes and the systems, even though this was effectively a city-initiated mistake. And I'm assuming that's – your answer to that is yes. And so, one, I'd like to know why the city should get that opportunity when – a second bite, if you will. And then the second argument is, assuming the city gets that second bite, does that relate or how does that relate potentially to giving the plaintiff leave to amend? Sure. So on the first point, yes, Your Honor. Certainly the city provided the district court with the wrong legal standard. We don't dispute that. But I think just in the current posture that we're in now, regardless of who is at fault for that situation, there's just not a record available for this court to apply the Matthews factors and hold, as Drew wants the court to hold, that pre-deprivation process is required in this scenario. And then as to the second point, you know, as our briefs noted, we think this court can affirm on the other two points and can affirm on the – But you don't think it's related, as Judge Calabresi suggested, the idea of part of the reason why leave to amend was denied was perhaps in consideration with the merits of the summary judgment motion. And so if we are opening things back up now for the city to flesh out and put more in the record, is it not reasonable to perhaps let Mr. Drew add – flesh out his claims as well? I think that's a fair point, Your Honor. I'm not going to push you too hard on it other than just to note that the standard is abuse of discretion. And so, you know – No, there's something a little odd about your argument because you're saying as to the question of Matthew v. Eldridge, as to that, we should leave everything open because so little was done. And as to everything else, instead, we should, in a situation which is botched, nevertheless say it's okay, it's out, and we don't do anything else. In a way, as to what you would want, you're saying we've got to talk about everything. And as to a thing like whether there was conversion, whether there was negligence, and as to that, well, there may have been mistakes, but let's just get rid of it. And there's a little inconsistency in the willingness – if we go back and open things, why not open things just realistically? I certainly understand Your Honor's point. I mean, I think you had noted earlier, though, that the state tort law claims are perhaps inconsistent with the – Yeah, but you can plead inconsistently. And that's just the point. But you go back and say this is not the kind of thing that Matthew v. Eldridge requires any big deal, then it is much more likely that a state conversion or negligence claim, if there was negligence in the particular case, would lie. That's why I find the inconsistent pleading less troubling than the inconsistent question as to what ought to be argued below. I certainly understand the point, Your Honor. I think our focus is primarily at this point on ensuring that this gets sent back down for a remand and further discovery on the Matthews v. Eldridge factors. We maintain the position we put in our briefs, but I'm not going to fight too strongly on that inconsistency there. Can I ask about the pro se solicitude? You didn't dispute that below, and then on appeal you raised this repeat litigant issue. I mean, first of all, isn't that waived? And second, isn't that inconsistent? Sure. So I don't think it's waived, Your Honor, first because of the unique posture of this case. I mean, the court sort of sua sponte, appointed counsel, asked for additional briefing on these issues so that Drew could raise these issues that had been previously waived. So I think the city can then respond with its own arguments in response to those. We're talking forfeiture in any event, not waiver. Waiver is his intention. We're talking forfeiture, which is less strong against you. Okay. Fair enough, Your Honor. And then I'd also point out that, yes, the city argued below that the district court said that it applied the lenient standard to his complaint. But then Drew does argue in his opening brief that the district court didn't, in fact, do that and withdrew that special solicitude to pro se litigants. That's on page two of their opening brief. So that's why we then responded and argued that even if that's true, that you can implicitly treat the district court's opinion as doing that. It wasn't an abuse of discretion to withdraw the solicitude here. If Your Honors have no further questions, we ask the court to remand to the district court for further proceedings on the Matthews v. Eldridge factors. Thank you, counsel. Thank you, Your Honors. Mr. Moss, you have two minutes for a moment. Thank you. Just two points very briefly. Our argument was not that the district court withdrew solicitude, just that it granted more deference and leeway to the city throughout the amendment process and extension and delay process than did Mr. Drew. The district court afforded solicitude at every step. It just didn't do what it needed to do and recognize his conversion and negligence claims at summary judgment. But I think more importantly, the city brings up again that it would be impractical and too large of a burden to provide some type of notice and procedure on the front end. What that suggests is that any form of notice, any kind, any type of procedure would be prohibitively costly for the city. And we know that's just not true. Ohio provides procedure procedures. Iowa does in quite robust ways. And the state of New York even provides account statements to inmates on a regular basis. These most of the procedure we're asking for is already cooked into the costs of the prisons. They already have a DOC grievance process and they already track most of this information. If the city's position is that we don't have to ever provide notice to inmates, that's just a constitutionally untenable position. Our view is that notice and process should be moved to the front end and any incremental cost to the city should not overcome the overall balance of factors. But all you're asking us to do is to say some pre-deprivation action is appropriate. We leave it up to development of whether what it is, whether it is a minimal, what that would be. That's correct, Your Honor. The only point the city has raised is there's costs associated with this. Would it meet what you're saying if the city just said to every inmate once a month we take money out without giving more? Our view is that some form of notice like that before depriving them of their property is due. Our position is also that some opportunity to object is due as well. How do we know how much that costs, what the actual risk of error are? None of that's in the record, right? The risk of error is not, but as we talked about previously, that's a normative inquiry and none of the cases, not Montañez or Sinaloa. So the Matthews v. Eldridge inquiry is normative. I mean, it says risk of error. It says weighing the cost and the risk. That's correct, Your Honor. But in Sinaloa, for example, and in Montañez, there wasn't an actual percent of error that was factored in. It was how the policy operated as a general matter. In those cases, because there were individualized amounts deducted from inmate accounts, it increased the risk of error throughout the process. And we have a very similar accounting process here. Your argument in a way is that giving the kind of general notice that I just described is costless. Just saying to people once a month we may take money out from that is costless. And we know that in any situation there is some risk of error. And if you have a peppercorn on one side and nothing on the other side, the balance still falls. Yeah. Our view is that whatever cost there is, it's marginal based on what we know from other states and about the prison's procedures themselves. And I'll just leave you with this. The Supreme Court of Matthews said that financial cost alone is not a controlling weight. May I ask what difference does it really make if we do what you do or if the other, and you go back down and, you know, it may be that we save ourselves an appeal because if a misguided district court on the basis of there being virtually no cost to some pre-notice and some risk nevertheless says I say no, then we have another appeal and then we throw it back. But is it beyond that, does it really matter what's going to happen when we go down below? Our view is that this should, this court should hold that some notice and process is due. And on remand, I don't think it will change the inquiry by the district court. But the record is fully developed to make that ruling in the first instance here. Okay. Thank you. Thank you, counsel. Thank you both. We'll take the case under advisement. That concludes our arguments for today. So I'll ask the court in defense.